IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
|    CAROLYN J. FLORIMONTE | : | CASE NO: 5:15-bk-02377-HWV |
|    CHAPTER 7 DEBTOR(S) | : | |
| | : | |
| | : | |
| SCRANTON LAMINATED LABELS | : | PLAINTIFFS |
| INC; SCRANTON LABEL and | : | |
| EDMUND J. CARR | : | |
| | : | |
| V. | : | ADV. PRO.: 5:15-ap-00144-HWV |
| | : | |
| CAROLYN J. FLORIMONTE | : | DEFENDANT |

### MEMORANDUM OPINION[1]

THIS CAUSE comes before the Court on the Plaintiffs' *Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. §§ 523 and 727* (AP Docket #1[2]). On September 2, 2021, the Court conducted a bench trial in this matter. During the trial, the Plaintiffs abandoned their claims under § 727, leaving just the issue of whether the Defendant-Debtor should be denied discharge under § 523.[3] At the conclusion of trial, the Court took the matter under advisement. The Court has since reviewed the testimony, exhibits, and post-trial briefs and is prepared to rule.

### I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief Judge Christopher C. Conner of the

---

[1] Drafted with the assistance of Alan T. Alexander, Esq., Law Clerk.
[2] References to the adversary proceeding docket will be cited as AP Dkt #XX. References to the underlying bankruptcy docket will be cited as Dkt. #XX.
[3] Except where otherwise noted, all statutory references are to Title 11 of the U.S. Code ("the Bankruptcy Code" or simply "the Code.")

U.S. District Court for the Middle District of Pennsylvania and dated September 11, 2000. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(J)(objections to discharge).

## II. FACTS[4] AND PROCEDURAL POSTURE

The Debtor-Defendant is Carolyn J. Florimonte ("Florimonte") who filed the underlying Chapter 7 bankruptcy on June 3, 2015. Florimonte has been proceeding *pro se* in both the underlying bankruptcy and in this adversary proceeding since the withdrawal of her prior counsel approved in an Amended Order granted by this Court on August 24, 2021. The Plaintiffs (collectively "Plaintiffs") are Scranton Laminated Labels, Inc. t/a Scranton Label ("Scranton Label"), a Pennsylvania corporation, and Edmund J. Carr ("Carr"), the corporation's owner.

The facts of this case are somewhat acrimonious and occasionally bizarre but ultimately only incidental to the Court's ruling, which is based primarily if not entirely on legal conclusions. Briefly stated, Florimonte was a former employee of Scranton Label, where she worked as customer service representative until her termination on April 18, 2003. Florimonte filed for unemployment compensation and was denied. She then filed a discrimination claim against Scranton Label with the Pennsylvania Human Relations Commission ("PHRC") and was again denied. Finally, Florimonte filed a civil suit against both Scranton Label and Carr individually, asserting claims of gender discrimination, retaliatory discharge, and hostile working environment in violation of federal and state law. That suit ended with a non-jury verdict entered on March 15, 2010, against Florimonte and in favor of Scranton Label and Carr.

The gravamen of Florimonte's claims throughout the administrative and legal proceedings was her persistent belief that her employers conspired to spy on her through surveillance equipment hidden in her car and office. Florimonte further alleged that this supposed surveillance

---

[4]To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

was the result of gender bias against her. At no point in any of the administrative or judicial proceedings in which she appeared did Florimonte present proof of the existence of any such surveillance beyond her own subjective and insistent belief that it took place.

On April 5, 2010, the Plaintiffs filed a state court action against Florimonte in the Court of Common Pleas of Lackawanna County, Pennsylvania (Civil Action No. 10-CV-2325)(hereinafter the "State Court Action"), seeking compensatory and punitive damages for wrongful use of civil proceedings arising from Florimonte's unsuccessful administrative and civil actions against them which were allegedly without probable cause and for an improper purpose. The State Court Action ended with a jury verdict for the Plaintiffs and a finding that Florimonte "acted in a grossly negligent manner or without probable cause, and primarily for a purpose other than that of securing the adjudication of her claims, when she initiated or continued civil proceedings against [Carr and Scranton Label]." *See* AP D kt. #1, Complaint, Exhibit A ("Jury Verdict Slip from the State Court Action").

The jury awarded Plaintiffs a total of $37,404.03 in compensatory damages and $7,595.97 in punitive damages (a total of $45,000.00) after finding that Florimonte's conduct in wrongfully initiating or continuing the civil proceedings was "outrageous." *Id.* On April 4, 2013, the state trial court judge affirmed the jury's award in a memorandum opinion and order denying Florimonte's motion for post-trial relief. *Id.* at Exhibit B ("Memorandum Opinion and Order").

On June 3, 2015, Florimonte filed the underlying Chapter 7 case and listed a claim by Scranton Label for $52,917.71 on her Schedule F. On September 24, 2015, Florimonte amended her Schedule, moving Scranton Label's claim of $52,917.71 to Schedule D and adding Carr's claim for the same amount. This amended filing identifies each of the Plaintiff's claims as a "Civil Judgment" and does not identify any specific property subject to lien. From other docket entries,

Page 3 of 9

Case 5:15-ap-00144-HWV    Doc 156    Filed 02/22/22    Entered 02/22/22 15:02:05    Desc
Main Document    Page 3 of 9

however, it appears that the Plaintiffs had obtained and perfected a lien on Florimonte's personal home, one which was third in priority behind Florimonte's first and second mortgages. *See* Dkt. #18 (*Motion for Relief from Automatic Stay* filed on behalf of the Plaintiffs) and #21 (Florimonte's *Motion to Avoid Lien [of Scranton Label and Carr] to Preserve Exemptions*).

On September 8, 2015, the Plaintiffs filed the instant adversary proceeding. Since then, the case's path to trial has been circuitous—it has been reassigned to a different judge a total of five times since the date of filing, and the original counsel for the Plaintiffs and Florimonte have both withdrawn.[5] The trial itself took only one day, in the course which, the Plaintiffs abandoned their claims under § 727 and proceeded exclusively under § 523. Post-trial briefing concluded on October 21, 2021.

### III. CONCLUSIONS OF LAW

Under § 523(a)(6) of the Code, a Chapter 7 discharge "does not discharge an individual debtor from any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The burden is on the creditor to prove these elements by preponderance of the evidence. *In re Webb*, 525 B.R. 226, 232 (Bankr. M.D. Pa. 2015)("And like all exceptions to discharge under § 523, subsection (a)(6) is construed strictly against creditors and liberally in favor of debtors.")

In *Kawaauhau v. Geiger*, 523 U.S. 57, the Supreme Court addressed the elements of § 523(a)(6) and held that the "willful and malicious" language represents separate elements.:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts

---

[5] Plaintiffs' counsel Mark J. Conway withdrew upon his appointment as a bankruptcy judge and was replaced by Brian Manning, Esq. Florimonte's counsel, Thomas J. Jones Jr., Esq. withdrew without substitution by order dated August 24, 2021 (and on the eve of trial) granting a motion to withdraw filed by Jones in response to Florimonte's *ex parte* letters to the Court and her expressed desire to proceed *pro se*.

> that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis in original).

*Kawaauhau*, 523 U.S. at 61.

The Court must find both willfulness and malice for a debt to be declared nondischargeable under § 523(a)(6). *In re Barr*, 606 B.R. 210, 214 (Bankr. D.N.J. 2019). A "willful" act is one that occurs "when the actor purposefully inflicts injury or acts in such a manner that he is substantially certain that injury will result." *Barr*, 606 B.R. at 214. A "willful" injury must be intentional and deliberate, and injuries that are the result of reckless or negligent conduct are insufficient. *Kawaauhau*, 523 U.S. at 64. A "malicious" act, in contrast, refers to "a wrongful act done consciously and knowingly in the absence of just cause or excuse." *Barr*, 606 B.R. at 214.

The Plaintiffs rely heavily on *Barr* in their arguments, as that case was one in which a prior state judgment arising from malicious prosecution and abuse of process claims was held nondischargeable because of the court's application of issue preclusion:

> Issue preclusion in bankruptcy applies when the issue was previously adjudicated by a state court. Issue preclusion applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment ...."

*Id.* at 214–15.

The Court finds *Barr* to be distinguishable from the instant case. In *Barr*, the state court judgment which served as a basis for the nondischargeability action resulted from specific jury findings of willfulness and maliciousness as those terms are used in § 523(a)(6). *Id.* at 215.

Specifically, the claims against the debtor in *Barr* for malicious prosecution and abuse of process were indisputably intentional torts evincing willfulness and malice under New Jersey law:

> To find malicious prosecution in New Jersey, a jury must find that "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." "Malice" is defined under New Jersey law as "the **intentional** commission of a wrongful act without just cause or excuse." Thus, a finding of "malice" under New Jersey law requires both the maliciousness and the **intentionality** of the action.

*Id.* at 215 (emphasis added).

> The elements of malicious abuse of process [in New Jersey] are: (1) the defendant has set legal process in motion for an improper ulterior purpose, and (2) the defendant has committed a **willful** act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose.

*Id.* at 216 (emphasis added).

The Plaintiffs in this case characterize their state court judgment against Florimonte as based on the intentional torts of "malicious prosecution" and "abuse of process," and they argue that principles of issue preclusion compel the Court to hold their claim nondischargeable debt under § 523(a)(6). The Court declines to accept that argument as framed because the record does not support their characterization of the judgment.

For one thing, the jury verdict cannot have been based on a malicious prosecution theory because Florimonte never initiated or procured *criminal* proceedings against either of the Plaintiffs, which is an essential element of malicious prosecution under Pennsylvania law. *Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa. Super. 306, 316, 614 A.2d 284, 290 (1992).

Likewise, the state court judgment does not appear to be grounded in the intentional tort of abuse of process as defined by Pennsylvania law:

> To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.

> This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa.Super.2008).

In the Court's view, the jury verdict from the state court proceedings does not appear to be based on the elements of abuse of process, which simply don't track with the language of Question 1 on the Jury Verdict Slip:

> Do you find that the Defendant, Carolyn J. Florimonte, acted in a **grossly negligent manner** or without probable cause and primarily for a purpose other than that of securing the proper adjudication of her claims when she initiated or continued civil proceedings against [the Plaintiffs]?

AP Dkt. #153, Exh B (emphasis added).

That language is plainly derived from Pennsylvania's common law tort of "malicious use of civil process, which was later codified by the Pennsylvania legislature as "wrongful use of civil proceedings" in the so-called Dragonetti Act. *Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), aff'd, 217 F. App'x 153 (3d Cir. 2007)("Pennsylvania has codified the common law cause of action for wrongful use of civil proceedings. The tort is interpreted and applied broadly against those who use legal process as a 'tactical weapon to coerce a desired result that is not the legitimate object of the process.'")

The Dragonetti Act states that:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

> (1) he acts in a **grossly negligent manner** or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Stat. and Cons. Stat. Ann. § 8351 (emphasis added).

Elsewhere in their post-trial brief, the Plaintiffs identify the jury verdict as representing liability for "malicious use of civil proceedings." But the Court notes that, according to the accompanying exhibits, Plaintiffs' then-counsel referred to the relevant tort as "wrongful use of civil proceedings." AP Dkt. #158, Exh A. The trial court similarly identified the Plaintiffs' original state court complaint as being one for "wrongful use of civil proceedings." AP Dkt. #158, Exh. B.

And this presents a problem for the Plaintiffs, because unlike abuse of process and malicious prosecution, the tort of wrongful use of civil proceedings does not require a finding of willfulness. As the emphasized portions of both the Jury Verdict Slip and the Dragonetti Act make clear, one can be guilty of wrongful use of civil proceedings through an act of *gross negligence* rather than one evincing willfulness. And as the Supreme Court clearly commanded in *Kawaauhau,* an act of gross negligence is not "willful" within the meaning of § 523(a)(6) and cannot be held nondischargeable under that provision. *Kawaauhau*, 523 U.S. at 64.

Of course, the Jury Verdict Slip gave the state court jury the power to find for the Plaintiffs if Florimonte had acted *either* in a grossly negligent manner _or_ without probable cause and primarily for a purpose other than that of securing the proper adjudication of her claims. That is, it is not impossible that the jury found for the Plaintiffs because it believed Florimonte had committed an intentional tort.

But to meet the requirements for issue preclusion, the Plaintiffs must show that the question of Florimonte's willful conduct was actually litigated and determined by a final and valid judgment

and that such determination was essential to that prior judgment. Because the jury *could* have found for the Plaintiffs based on gross negligence rather than willfulness, the Court concludes that the issue of willfulness was *neither* actually litigated *nor* determined by a final and valid judgment. And since the jury could have found for the Plaintiffs under either a theory of gross negligence or willful conduct with no change in the verdict, the Court further concludes that the issue of willfulness was not essential to that judgment. Accordingly, issue preclusion does not apply in this matter.

Furthermore, moving on to merits of the question, the Court finds that this same analysis is fatal to the Plaintiffs case. The burden was on the Plaintiffs to prove by preponderance of the evidence that their judgment against Florimonte was based on willful and malicious conduct of such character that it should be deemed nondischargeable. And, as noted, § 523(a)(6) is to be construed against the Plaintiffs and in favor of the Debtor. Despite that, the evidence actually adduced clearly shows that the state court judgment was one that could be based on either gross negligence or willful misconduct, and an essential element of the nondischargeability claim—willful conduct—is not proven. Thus, the Court must rule in favor of the Debtor-Defendant.

## **CONCLUSION**

**ACCORDINGLY,** based on the foregoing analysis, the Court finds for the Debtor-Defendant Carolyn J. Florimonte and against the Plaintiffs, Scranton Laminated Labels, Inc. t/a Scranton Label and Edmund J. Carr.

An appropriate Order will follow.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: February 22, 2022